Our next case for oral argument is 19-8040 Hearst v. Nationwide. You may proceed. If I may, before I begin, reserve five minutes for rebuttal. Okay, we'll keep an eye on it for you.  John Coperty on behalf of the appellant Sarah Hearst and the law office of Sarah Hearst, Your Honor. Your Honor, the primary issue in this case today is whether Sarah Hearst individually is entitled to first party coverages under insurance policy initially issued to her law firm, Sarah Hearst, law office of Sarah Hearst LLC, that was subsequently revised after the insurance company issued an amended declarations page that specifically named her as a named insured on the policy and said nothing further. So the question here in the two first party coverages being at issue in this case is one, uninsured motorist coverage, and two, medical payment coverage. Obviously, the more significant coverage that we think is at issue here is uninsured motorist coverage, given the horrendous nature of the accident that led to Ms. Hearst becoming seriously injured while riding her bicycle, essentially being a pedestrian. So the primary issue then is whether under the policy as revised through this amended declaration is whether she's now entitled to recover under those two provisions, which nobody disputes were losses that occurred during the effective date of the policy. The alternative issue that we also pose to the court today is whether the district court erred in granting summary judgment for the insurance company on Ms. Hearst's claim or the appellant's claim for reformation of the policy. But we don't think the court needs to go there. We think given the plain language of the policy, the court need nothing more than enforce the policy according to its plain terms to find as a matter of law that this policy, in fact, provides these coverages because it's absolutely undisputed that these losses occurred during the policy period. What's your response to their known loss doctrine argument? Absolutely inapplicable under the facts of this case, Your Honor. We don't dispute that doctrine as a general principle of law, and we wouldn't be here today, for example, if they had added Ms. Hearst to a subsequent policy. We wouldn't be here because we're not seeking coverage under a prior policy period. We are seeking coverage under the same policy period in which she not only sustained the losses but in which she became insured for those losses. What would happen to you if when the agent called the underwriter and said, hey, we want to add her as a named insured to the policy, if they'd have said no? If they had not added her to the declarations page as a named insured? Right. And so, again, we don't dispute that at the time of the accident, Judge Carson, that Ms. Hearst did not have uninsured motorist coverage and Medicaid coverage because the way the policy was written, she had to be occupying a covered auto at the time she sustained her injuries as a result of an uninsured motorist. We don't dispute that. Right. Do you agree that they had the right to say no when she asked to be added during the policy period? Well, I'm not sure how to answer that question other than they made the decision to add her. What went through their mind, I can't speak to their mind on that, and there's nothing in the record on which I can base my answer on. Well, I mean, it sort of weaves back into what Judge Timkovich was asking you. I mean, you don't insure against a known loss. They were already aware of the loss, and so it just doesn't make sense to me why they would agree to insure her for a loss that had already occurred. I mean, because that wasn't part of what went into underwriting the original policy. Well, what we do know, Your Honor, is at the time that there were conversations between Ms. Hearst and her insurance agent, Dave Alden, there was no question that both parties went away with the understanding that Ms. Hearst definitely intended to be covered for accidents, for injuries that occurred, even when she was not occupying a covered auto. That's what they understood full coverage to mean. Ms. Hearst understood that that's how her prior policies had been written on her personal automobiles and had no reason to believe that she would be any less covered under this policy. But at the same time, you agree that the plain language of the policy doesn't square with that. At the time of the LLC's policy, at the time she had the accident. Yes, because she wasn't there as a named insured, and she would only have the coverage when occupying a covered auto. Right, and so even when she first bought the policy, if she intended it to function just like her personal policy, I mean, she has a duty to go read that policy and understand what the terms are, doesn't she? She can't rely on some informal understanding with the agent that sold it. That is correct, Your Honor. The insured has a duty to read the policy. We don't dispute that. But at the same time, it's a well-established principle of Wyoming law that a failure to read the policy does not bar a claim for reformation. Okay. What's the reformed policy? Is it a commercial policy that covers employees of the LLC? What's the insurance product that we're creating here? I believe it's in record. I'm sorry, Your Honor. Rule in your favor, what's the insurance product that we're creating? I'm sorry, one more time. I didn't hear that completely. Well, are you asking that we interpret the facts here to create a commercial policy that covers employees of the LLC? Employees of the LLC under the policy are covered even before the revised amendment, Your Honor. When they're not, the only time when they're not covered. You want us to have them covered for accidents when they're in their capacity as a pedestrian, correct? Correct. When they're not occupying a covered auto. There was only one auto covered by this policy. So in order for her to have been covered, she had to have actually been injured while occupying that auto. But Nationwide doesn't sell that policy, does it? They did in this instance. It doesn't cost any more to add. That's the significance. It's as if she had been insured from day one. All they had to do was add her as an additional insurer. It didn't cost any more money. And for whatever reason, she didn't get added as an additional insurer. Well, did she ask to be named insured? I don't think specifically. But what the idea was, was I want to be covered. And I think Mr. Alden admits that in his deposition testimony, that he understood that Ms. Hurston, he intended to procure a policy that covered her for U.M. coverage even when she was not occupying a covered auto. But he also, Mr. Alden, also said that he was specifically trying to procure the policy for the LLC because the LLC was the entity that owned the vehicle. So he, Mr. Alden, knew exactly what he was doing. He just misinterpreted the policy. Right. Perhaps. There might be some, but I think what your point goes to, Judge Bechirach, is there's issues of fact here on the reformation. What did they truly intend? And it's a jury question. Well, how is there a jury question on what Nationwide intended? There might be a jury question on what Ms. Hurston intended or even Mr. Alden. But I don't think there's a jury question on what Nationwide intended. Right? Well, I think acting through. They intended to issue a policy to the LLC because that's what Mr. Alden had requested. And it would cover whatever it covered. It wouldn't cover the LLC, you know, obviously, as a pedestrian. Right. And bear in mind, our position is, and we think this is supported by the record, Mr. Alden was acting as Nationwide's agent. So whatever he intended would be imputed to Nationwide. Now, your evidence about that, I understand, is that he had a representation agreement. Right? That's your only evidence that he was acting as an agent. Now, obviously, he was a selling agent. But how can we reasonably infer from the statement that he had a representation agreement that he was able to bind Nationwide to conform to whatever his unilateral understanding of what the policy would cover? How can we reasonably infer that? Well, let me try to answer it this way, Your Honor. First, under Wyoming law, Wyoming broadly construes or gives a broad construction of an insurance agent's powers. And generally, what I read in the Wyoming case law on this issue is merely procuring the policy for an insured on behalf of an insurance company is enough to make that agent the agent of the insurance company. And we cite that in our brief. I think it's the Cordero case that we cite. And furthermore, it's generally a fact question whether the agency relationship exists and the extent and scope of that agency relationship. So what if Mr. Alden had testified, maybe a different scenario, that Ms. Hurst was driving the vehicle and that she was completely drunk? And she was drunk. And Mr. Alden testified that, well, I thought the policy covered insurance even when they're drunk. And Ms. Hurst said, I thought that it did, too. So would that bind nationwide to cover an occupant of a vehicle that is intoxicated simply because the selling agent unilaterally believed that it covered something that obviously wasn't covered? I mean, what limit is there to the selling agent's ability to bind the insurer? That's a good question. And I'm thinking here, I can't think of any insurance policy out there that would ever fit that scenario. It would depend on whether she was seeking first-party or third-party coverage. I would assume if it was third-party coverage, she would have that coverage regardless of whether she was intoxicated because of the financial responsibility laws in the state of Wyoming aren't going to allow an insurance escape liability, at least up to the minimum limits required by law. So it would become, in that instance, you'd get into a question of public policy and that would probably be an issue of limits. And the court might construe it in favor of reformation because you've got an innocent tort victim out there. And they might construe it that that's what the party's intended and we're not going to hurt the victim of this woman's tort. But in the first-party context, we also have public policy concerns at play because Wyoming is a state that it isn't mandatory to have uninsured motorist coverage, but it certainly is statutorily required that it be offered. So in that instance, there are public policy concerns that come into play here that should guide the court's analysis on this because we are talking about, I think I'm going to, have I reached my time for my rebuttal? Two minutes? Okay. So to get back to your question. Yeah, if you want to save rebuttal time, you'll have a minute 50 left. Oh, perfect. So I think in that instance, it's a little nebulous, but I think that in the end of the day there might be a serious issue here as to whether there would be, you know, what provision we would be talking about. Here we know precisely what provision of the policy we're talking about. All it was was a question of adding her to the declarations as a named insured, and that would broaden the coverage, and it will allow for Ms. Hurst as the sole member of this LLC to have this coverage. Even the coverage would follow her. It's portable. The way the policy was written, it wasn't portable. It would only come into play and be triggered when she was occupying a covered auto. But by adding her as a named insured, it made it portable so it doesn't matter. She would have the coverage even when she was injured as a pedestrian as such as what occurred here when she was riding her bicycle. So we think there is a serious question here that should the court find as a matter of law that it can't rule on the coverage question or it can rule as a matter of law that for some reason the policy doesn't provide this coverage, then certainly we think there's fact issues that should be decided by a jury on the reformation question because, again, we believe the record supports a finding that there was a mutual understanding predating the issuance of this policy that said the issue, that she would have this full coverage, that it would be portable because all the policies she had had portable coverage for uninsured motorist benefits. And it was this instance that did it for whatever reason. She didn't get on there and it came to everybody's surprise that, my gosh, we don't have it here. So we think then, but going back to the plain language of the policy, she's entitled to this coverage because the policy provides unequivocally, plainly states, that we cover all losses nationwide. We'll pay for all accidents or covers all accidents and losses occurring during the policy period. So the question is, did these losses occur before or during the policy period for which she became insured for? And the answer is yes. And we just asked the court to just follow Wyoming law, enforce the contract as written, and I'll save the rest of my time for rebuttal. I think your time's expired. Kevin, did he start at 15? Did he start at 15? Did he start at 15? Yes. Okay. All right, Mr. Palmieri, let's hear from Nationwide. May it please the court, counsel, along with Jack Mann and Greg Herring, I represent Nationwide Mutual Insurance Company. We request that this court affirm the district court's well-reasoned order granting the motion for summary judgment. As you've heard, this lawsuit relates to uninsured motorist coverage under a business auto policy, a commercial policy, and whether it would provide coverage for Sarah Hurst while she was riding her bicycle on a Saturday afternoon. What you have not heard is that, in fact, there's a related matter that went up to the Wyoming Supreme Court relating to Ms. Hurst's personal auto policy through Metropolitan Life Insurance Company, which, in fact, provided uninsured motorists in this situation, which is exactly the way the insurance products should work. There was a personal auto policy that provided coverage for uninsured motorists, and, in fact, there are insurance products available, whether it would be an umbrella or an excess policy, that Ms. Hurst could have purchased. The product at issue here, the commercial policy, the business auto policy, is not designed to provide or to protect someone in an unrelated Saturday afternoon activity. But once you made her a named insured, she would have gotten that coverage, right? Even on the commercial policy. Potentially, Your Honor, then we'd have to look at whether it would be a pedestrian or bicycle along those lines. But it may, and that's why there, to Judge Carson's comment, that's why there was such pushback by Nationwide to say we don't typically add individuals to those business policies, and, in fact, the agent so conceded. The evidence here, the undisputed evidence, is that, in fact, an exception was made solely with respect to future claims, solely with respect to claims that may occur in the future, and that is confirmed even by the agent where he sends the email, contemporaneous email, to Ms. Hurst saying it would apply to future claims. Let's pray you don't have to use it. You go ahead, Joe. You go. What's the other evidence that it was perspective only? Well, first of all, to take a step back, Judge Carson, we don't have to get to that extrinsic evidence because the language of the policy would govern this. The liberalization clause here provides that it kicks in immediately. To Judge Timkovich's comment about the known loss doctrine, the known loss doctrine is a fundamental insurance principle, and we raised it, and to the extent that it would apply here, that fundamental purpose is you don't apply it to fortuitous, you apply it to fortuitous events, not to past events. The known loss doctrine kicks in typically when there's a loss prior to the inception of the policy. Here it's a broadened coverage during the policy itself, so therefore the liberalization clause of the policy kicks in and only applies immediately. The other evidence, though, Judge Carson, is on both sides, first with respect to the agent, his emails, contemporaneous emails, specifically discuss that. Again, they are going to add you to the policy on future claims. That's at the appendix, page 169. His testimony throughout his deposition was that he did not request that they backdate this at all, and in fact that is found at page 123, appendix volume 1. In requesting the addition of Ms. Hurst, were you requesting that Nationwide backdate coverage? Answer, no. Further, there are the emails, or there is an email from Nationwide where, in fact, an internal email discusses that and, in fact, talks again about that it would only apply to future claims. So it's a situation where the language of the policy addresses it, the liberalization clause indicates that it would apply immediately, that's prospectively. The extrinsic evidence, though, even to the extent there would be any issue or dispute, applies only prospectively, not retroactively. There is no evidence, no evidence that this was ever intended to backdate coverage or to provide that. Remind me of the timing of all this. So after she was added as a named insured, how much time passed before Nationwide got hit with a claim for this uninsured motorist coverage? So the timing on this, Your Honor, is April of 2014, policy goes into effect. May of 2014, accident occurs. March of 2015, Sarah Hurst is added individually. Then April of 2015, the policy would expire. The lawsuit was filed. Well, presumably she made a claim, though, before she filed a lawsuit. She didn't just immediately file a lawsuit against you, did she? No, and, in fact, the claim was denied in February of 2015. She made the claim, I'm not sure the timing of the notice of the claim, but Nationwide had addressed it and resolved it, denied coverage under the business auto policy by February of 2015. Right, but then March comes along and she gets you to add her as a named insured, right? Prospectively, yes. Well, that's in dispute. So then did you get another claim after she was added? Did she say, wait a minute, you added me, so now I get coverage? Your Honor, if I recall the record correctly, the next step was the lawsuit when the complaint was filed. So there are three issues. Don't you have to file a claim under your policy before they can sue you? Well, the claim had been filed and denied by February. I know, but her argument is there's a new policy in town and it's an independent basis for coverage, right? It should be, yeah, and there was to my knowledge. You've not raised that defense. We haven't raised it. But, again, somehow, I think to your point, Judge Timkovich, is, okay, well, then she's added, and now all of a sudden it's coverage within the policy period, and that coverage would include the accident that occurred in May of 2014, 11 months earlier. Three arguments are presented. The first has to do with the coverage. That's addressed under the contract language. As with any insurance claim, really the analysis starts and, in this case, ends with the language of the policy. The liberalization provision here talks about the effect that if you have broadened coverage, it applies immediately. Immediately is prospectively. You look at everything under insurance law, the known loss doctrine, all the other concepts of that. Really there's no support for the argument here. But the alternative argument is the contract needs to be reformed to reflect the meeting of the minds between Mr. Alden and Ms. Hurst. Exactly. So that's the second argument, and understandably that they would require it. What you have to look at, though, is what are the meeting of the minds, and did those minds meet? And I think the district judge did an excellent job here even looking at this and giving the evidence in light most favorable to the plaintiff what was supposed to happen. What we heard was is that Mr. Alden would provide full coverage and that full coverage would include uninsured motorist benefits. That's the allegation. Okay. Now, I know you dispute this, but if you assume arguendo that Mr. Alden did act as the agent in order sufficient to bind nationwide, viewing the evidence in the light most favorable to the plaintiff, couldn't you reasonably infer that Mr. Alden and Ms. Hurst had the same understanding? Well, to the extent of what would be covered. Well, there you go. It's that what would be covered. To the extent that there is any evidence of any misunderstanding whatsoever, again, you have to look at what Mr. Alden would say, and it's full coverage including UM. Well, I mean, as your adversary points out, he was specifically asked at deposition whether, I forget the exact question, but it ends in yes, that his understanding was that she would be covered for injuries that she would incur as a pedestrian. I take issue with that just briefly. The issue is pedestrian never came up. And, in fact, the answer, his answer at deposition, this is at appendix volume 2, page 107, lines 9 through 23. We quoted at page 38 of our brief, I procured uninsured motorists for Sarah Hurst individually to be covered when she was hit by an uninsured motorist. That's the MetLife policy. That's the individual policy. I did not ever, the pedestrian part never came into play. That was his testimony. So there is no evidence. I'm talking about the question, is the answer to my question yes? The answer is yes. Well, that's the pedestrian issue. He goes on to say, is the answer to my question yes? And the answer is yes. But when you look at the context, the pedestrian never came in. The question was, you know, whether it was occupying a covered vehicle. She would have coverage if she was driving to court in her Lexus automobile and was injured by an uninsured driver. She would have uninsured motorist coverage while she was occupying a covered auto. So the full coverage that Mr. Alden wanted to procure included uninsured motorists and it included her. How do you know that he was referring to the Met policy? Well, it says individually, I procured uninsured motorists for Sarah Hurst individually to be covered when she was hit by an uninsured motorist. Then he says, I did not ever, the pedestrian part never came into play. Is that referring to the nationwide policy? I think both. I don't think there's any evidence that pedestrian ever came into play with MetLife or with the business auto. That would be a pretty sophisticated conversation to say, okay, now wait a second. Are we going to have pedestrian coverage under my MetLife or the business? The insurance product here was the MetLife personal policy. If you wanted to have uninsured motorist coverage, that would include you riding your bike on a Saturday afternoon, is out there. It's MetLife. She purchased it. She purchased $300,000 limits. Another insurance product out there would be an umbrella or an excess coverage, and she could have purchased that as well. The business auto is not that product. Did the LLC have other employees besides Ms. Hurst? I believe she's certainly the only member, and I do not know whether she had other employees, Your Honor. I'm not sure about that. Would a secretary driving the car have been covered? Potentially. Or paralegal. We'll go back to the old days when you actually had to drive to court to file something. Let's say that there would be a 4 o'clock filing or something, and, oh, my gosh, can you run this over to the courthouse, and the paralegal would be driving it? I'd have to look at it. I think that that might include if they're occupying a covered vehicle in the course and scope, it may provide coverage, but I don't know what the facts of that would be. Well, under their theory, the paralegal would be covered riding a bike on a Saturday afternoon. Exactly. I mean, at some point, you would just take it so far outside of the intended coverage here. So to go back to the Reformation, though, again, what you would require would be, and that's where Judge Fruenthal did such a nice job with this. Even under the Reformation, there's no meeting of the minds, and you have to have clear and convincing evidence. What really was at issue here was adding Sarah Hurst individually. When they added the policy, it's when the LLC bought the Lexus. It makes perfect sense. That was in 2007. For the next seven years, every year, you'd get the declarations page that would show the named insured is the LLC. There is no evidence here that somehow there was some miscommunication or no meeting of the minds that did not result or that there's a mistake that had to be addressed. To the contrary, all the evidence is that that's the product that they purchased to cover the Lexus that was purchased by the law office. It's a soothing argument, though, that we disagree with you about that. With regard to Alden and Ms. Hurst, how do you respond to your adversary's argument that the representation agreement created a reasonable inference that Mr. Alden had authority as the agent of nationwide to buy nationwide? Well, again, and the district court addressed this, it's immaterial to this appeal because there is no meeting of the minds. If there was an issue that Mr. Alden said something and there would be an issue, then we can address it. But when there's no meeting of the minds, the only thing that the mistake would be that Sarah Hurst wasn't the named insured. So if we end up concluding that Mr. Alden and Ms. Hurst had the same understanding, then you lose on the reformation theory. Well, no, then it just gets remanded for further proceedings. And then we'd look at the evidence and we'd look at the authority. We'd have to reverse and remand. You'd have to reverse and remand. Then we'd have to look at whether there actually was that authority. Certainly in this record, we don't have it because it's immaterial. So the third argument had to do with the claim for attorney's fees, which is allowed. Again, the judge had addressed that. Under any argument, it's reasonable. For those reasons, we request that the court affirm the district court summary judgment order issued by the district court in a well-reasoned opinion. Thank you, counsel. Thank you. Mr. Kopit, I think you used all your time. Do you want two minutes for rebuttal? Thank you, counsel. Thank you very much. We appreciate your arguments. Counsel are excused and the case is submitted.